United States Bankruptcy Court
Western District of New York
-----------------------------------------------------

In Re:

    Dennis R. Herlan                                               Case No. 04-13179-K
                       Debtor                               Chapter 7

-----------------------------------------------------


OPINION - - FINDINGS OF FACT, CONCLUSIONS OF LAW
AND MEMORANDUM OF DECISION


Background and Procedural Posture

1. A petition and schedules were filed on April 30, 2004. Among the assets listed by the Debtor was improved residential real property located at 5783 Beach Street, Olcott, New York (hereinafter the "Beach property.")

2. Schedule A, as filed by the debtor, listed the current market value as $92,000.00 and the Schedule D declared secured indebtedness to First Niagara Bank as $93,744.00. However, the Trustee's appraiser found a higher value.

3. On January 7, 2005 the Trustee, Morris L. Horwitz, filed a turnover motion (11 U.S.C. § 542, 11 U.S.C. § 521) with regard to the aforesaid property, alleging therein that there was non-exempt value in the premises, despite the secured indebtedness and the allowable exemption of $10,000.00.

4. On January 20, 2005, a hearing was held on the turnover motion filed by the trustee. The Trustee and the Debtor exchanged appraisals as to the Beach property, and cognizance was given to a life estate which encumbered the property when the deed conveying title to the Debtor was given. An Order was granted directing that the Debtor "turn over" to the Trustee the non-exempt equity in the Beach property "estimated by the Trustee to be $17,500.00."

5. Said Order was entered on January 25, 2005. In the interim, on January 24, 2005, the Trustee filed a Notice of Intent to Settle which was corrected by a Motion and Notice of Motion to Compromise Claim filed on January 25, 2005. A hearing was set for March 17, 2005.

6. On March 7, 2005, a Motion for Relief from Stay was filed by creditor Nancy J. Armanno (hereinafter "Armanno") with regard to the Beach property; the return date of this motion was likewise set for March 17, 2005.

7. On March 10, 2005, an objection to the Motion to Compromise was filed by creditor Armanno. The basis for both the Armanno Motion for Relief from Stay and the Armanno objection to the Motion to Compromise arise out of the allegation made by Armanno that a "Real Property Agreement" (so styled in the original) between the Debtor and Armanno, recorded in the Office of the Niagara County Clerk on July 20, 1992, is a mortgage which is superior to the lien of First Niagara Bank.

8. On March 17, 2005, a hearing was held on both motions and both motions were continued by agreement of counsel appearing for the Debtor, the Trustee and Armanno. Counsel were directed to review their respective positions in the interim to determine if any resolution could be reached.

9. On April 21, 2005, counsel again appeared on the continued hearings. No resolution on either motion was achieved and it appeared to the Court that not all proper and necessary parties were present. The Court directed the Trustee to notify First Niagara Bank and Commonwealth Land Title Insurance Company of the status of these proceedings, and to appear at an adjourned hearing on May 11, 2005, in Buffalo.

10. On May 11, 2005 a hearing was conducted in Buffalo, New York. The Trustee, Morris L. Horwitz, was present, together with Peter Muth, Esq. For First Niagara Bank, Mark R. Danna, Esq. for the Debtor, Daniel E. Sarzynski, Esq. for Armanno, and Kristie L. Stromecki, Esq. for Commonwealth Land Title Insurance Company.

11. The Court received and considered the arguments, affidavits and memoranda submitted by various of the parties through counsel.

12. The Motion for Relief from Stay was denied on May 11, 2005 without prejudice although no Order was submitted. The Motion to Compromise was continued to June 9, 2005.

13. On June 9, 2005, Morris L. Horwitz was present before the Court in Niagara Falls, together with Mark R. Danna, Esq. for the debtor and Daniel E. Sarzynski, Esq. for Armanno. Additional arguments were entertained and as no further or greater offer for the non-exempt interest of the Trustee in the Beach property was made, the Motion to Compromise was approved whereby the Debtor will pay to the trustee the sum of $7,500.00 for said interest.

14. These constitute the Findings of Fact. The Conclusions of Law now follow.

DECISION

Whether the agreement is evaluated as if this were merely a dispute between the parties thereto, or is examined as a bankruptcy question only, the result is the same. The denial of the Armanno motion to lift stay and the granting of the motion to compromise the claim of the trustee to the non-exempt value of the Beach property both arise from the same factual determination: the "Real Property Agreement" is clear on its face and does not purport to be a mortgage, security agreement, deed of trust or other lien upon the Beach property. Moreover, the Deed from Armanno to the Debtor does not reference any unpaid consideration. As was said in another case in a mere two-party context, "Equity will generally intercede to give effect to an agreement that a party shall have a lien, but there is no such agreement [presented there] . . . [In] a particular case, compelling equities or a trust relationship may justify intervention of a court of equity to act where otherwise a party would have no adequate relief, but there are no compelling equities or trust relationship [presented there]. Absent such compelling equities or trust relationship, the court may not act to create a lien where it does not affirmatively appear that any was intended."[Castelli v. Walton Lake Country Club, 112 N.Y.S. 2d 179 (Sup. Ct. 1952)]

The case here at bar would be four-square with the *Castelli* holding even if this were merely a dispute between Armanno and the Debtor. The Court has examined the "Agreement" and finds that it is an agreement to provide for payments upon the

happening of a future event (the termination of life estates). The "Agreement" has no security language, or default language, and did not reflect the need for payment of a mortgage tax even though it was recorded.  Counsel for Armanno provides a copy of a letter dated June 13, 2003 from prior counsel for Armanno to the Debtor demanding payment since the life estates had terminated. But, there was no claim made therein of an interest in the real property since none was created by the "Agreement." It is merely a demand for payment of money.

No suggestion has been raised as to any "trust relationship."[1]  Short of the Debtor "confessing" a true intent to create a lien, it is hard to see how Armanno could prevail even in a two-party dispute.

And more importantly, this is not a two-party dispute.  This writer has regularly and uniformly held that once bankruptcy intervenes, the bankruptcy estate is not "stuck" with whatever an adverse claimant and a debtor agree the true intentions were.[2]  Rather, the Trustee, acting for the benefit of creditors, is entitled to rely on a written record that is unequivocal.  A party who freely chose, clearly and unambiguously,

---

[1] The relationship between the Debtor and Armanno is not known to the Court. However, it is by no means uncommon for family, companions, etc. to convey property on credit without any intention whatsoever to encumber the property.  One example is where the conveyance itself was an effort to place the asset beyond the reach of the grantor's present or future creditors.  "Take title now and pay me later if you can," or "Take title now and I trust you to reconvey to me later" is, unfortunately, not an uncommon scenario unearthed in bankruptcy cases.

[2] See 11 U.S.C. §§ 544 and 558.  See also 5 Collier on Bankruptcy, 15th Ed. ¶ 544.03 ("The purpose of the 'strong arm clause' is to cut off . . . secret liens . . . against the debtor's property . . . .")

to enter one form of legal relationship with a debtor will not succeed in asserting (as against a bankruptcy trustee) that the relationship was in fact something different.  For the Court to hold otherwise would ennoble persons who choose <u>not</u> to express their true intentions over the rights of creditors.  Even when persons do express their true intentions they often stumble over the technicalities of doing so.  Equity does not favor a claimant who never even tried to obtain security.  See *In re Wittmeyer*, 311 B.R. 137 (Bankr. W.D.N.Y. 2004) and *In re Cranston*, Case No. 03-17366 K, (Bankr. W.D.N.Y. May 17, 2004) (unpubl.).

That being said, the Court does not purport here to "quiet title" in the Debtor.  Rather, the Court here merges the Estate's interest into the Debtor's.  Although any *in personam* liability of the Debtor to Armanno will be discharged, any claims of ownership or title, etc., <u>as among the Debtor, the Mortgage Bank and Armanno</u>, are not decided here with *res judicata* effect because this is not an Adversary Proceeding, with all necessary parties brought within the jurisdiction of the Court by Summons and Complaint.  This Order simply approves the transfer of all of the Trustee's right, title and interest to the Debtor.  Armanno's claims here are legally inadequate to be entitled to protection <u>as against the Trustee</u>.  The Trustee is authorized to issue a Trustee's Deed or a Quitclaim Deed to the Debtor.[3]

---

[3] As the Court advised in open Court, any <u>non-frivolous</u>, *in rem* action that Armanno might consider bringing against the land in a suitable forum, is not barred by this Order.  Any effort to collect any money from the Debtor <u>is</u>, however, barred by the Debtor's Discharge in Bankruptcy.

SO ORDERED.

Dated:  Buffalo, New York
         August 12, 2005

                                                          _____
                                                                          U.S.B.J.